990 F.2d 789
 Hester Lee SEARLES, Individually, as Administrator of the
Estate of Metz John Searles, Deceased, and on
behalf of a class of similarly situated
individuals, Appellant in No. 92-1573,
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.
Hester Lee SEARLES, Individually, as Administrator of the
Estate of Metz John Searles, Deceased, and on
behalf of a class of similarly situated
individuals, Appellant in No. 92-1574,
v.
J. Clayton UNDERCOFLER; Frank W. Jenkins; Mary C. Harris;
Thomas M. Hayward; Richard E. Kurtz; H. Patrick Swygert;
Andrew L. Warren; Louis J. Gambaccini; Howard J. Roberts,
Jr.; Charles W. Thomas; R.O. Swindell; Patrick
Nowakowski; Richard L. Fasy; Joseph Russell; John T.
Prader; Sandra E. Peopples; George Spence; Jeff
McCormick; Hal S. Davidow; W. Eric Vogel; R.M.
Hergenrader; Charles Baum; Stephen C. Stitsworth; Henry
David, Jr.; Gerald P. Lynch, Jr.; Anthony Theodoro;
William Swent; William C. Glenn; Dominic Principe; Gino
Roman; Carmen Digaetano; William Gulden; Dennis Miller;
Robert Burrell; Miguel Moncayo; Gene Yee; Larry Jackson;
R. Lyman; Paul Gary El; James Sweeney; Robert Perazzo;
Richard Lineman; Joseph Farkus, Individually and in their
Official Capacities.
 Nos. 92-1573, 92-1574.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 22, 1993.
Decided April 27, 1993.
Sur Petition for Rehearing May 21, 1993.
 
 Stewart L. Cohen, Kessler & Cohen, Philadelphia, PA, William D. Marvin, Morris M. Shuster (argued), Shuster & Marvin, Bala Cynwyd, PA, for appellants.
 David P. Bruton (argued), Drinker, Biddle & Reath, Perry S. Bechtle, LaBrum & Doak, Philadelphia, PA, for appellees.
 BEFORE HUTCHINSON, NYGAARD and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 I. BACKGROUND
 
 1
 Plaintiff, Hester Lee Searles, individually and in her capacity as administratrix of the estate of her husband, filed the first of two complaints on October 28, 1991, seeking damages for the fatal injuries sustained by her husband in the derailment of a Market/Frankford Elevated ("El") railcar on March 7, 1990.[1] The Southeastern Pennsylvania Transportation Authority ("SEPTA") which operates the El was the named defendant in the first complaint. On February 20, 1992, plaintiff filed a second complaint against a number of individual SEPTA employees and officers. Both complaints contain similar allegations.
 
 
 2
 The derailment occurred after a motor that had fallen from the bottom of a moving railcar struck a switch and caused the rear wheels of the car in which decedent was traveling to go onto a different track than the front wheels of that car. The car, which was then travelling on two different tracks, struck the pillars that separated the tracks. As a result, decedent was killed.
 
 
 3
 Plaintiff alleges that defendants failed to secure the motor properly and also failed to discover the alleged dangerous condition despite numerous purported maintenance inspections. Plaintiff asserts liability based upon SEPTA's alleged "policy or custom of following a maintenance inspection and repair program ... which was grossly negligent, in reckless disregard for the safety of the public, and ... continued with deliberate indifference to the rights of others." Plaintiff also asserts that one or more of the individual defendants "adopted and approved" this policy. Plaintiff alleges that "[a]s a result of defendants' acts or omissions, defendants deprived persons in SEPTA's care as users of public transportation of safe and continued enjoyment of life, and liberty without due process of law, entitling plaintiff to bring th[ese] action[s] pursuant to 42 U.S.C. § 1983."
 
 
 4
 Defendants filed identical motions to dismiss the two complaints for failure to state a claim for which relief could be granted. The district court, in a consolidated memorandum and order, granted both motions to dismiss. Subsequently, plaintiff filed timely appeals from the district court's order.
 
 
 5
 The district court had jurisdiction over these Section 1983 actions to redress an alleged violation of constitutional rights under 28 U.S.C. § 1331 (1988) and 28 U.S.C. § 1343(a)(3) (1988). We have jurisdiction under 28 U.S.C. § 1291 (1988) over these appeals from the district court's order granting defendants' motions to dismiss. Our review is plenary. See Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir.1992).
 
 II. DISCUSSION
 
 6
 Defendants assert, and the district court concluded, that dismissal of the complaints in these cases was compelled by the Supreme Court's decision in Collins v. City of Harker Heights, Texas, --- U.S. ----, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Plaintiff finds this case distinguishable. Accordingly, we turn to a detailed review of the Collins decision and a comparison of the complaint in that case with plaintiff's complaints in these cases.
 
 A. Collins v. City of Harker Heights
 
 7
 In Collins, the Section 1983 action plaintiff was the wife of a city sanitation worker who died of asphyxia after being overcome by sewer gas. Liability was predicated on a violation of substantive due process.[2] The policy asserted in Collins was a "custom and policy of not training [city] employees about the dangers of working in sewer lines and manholes, not providing safety equipment at job sites, and not providing safety warnings." Id. at ----, 112 S.Ct. at 1064. The constitutional right asserted was the decedent's "constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the city['s] custom and policy of deliberate indifference toward the safety of its employees." Id.
 
 
 8
 The Collins Court set forth a two-part analysis to be followed "when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Id. at ----, 112 S.Ct. at 1066. The Court assumed, without deciding, that the allegations in the complaint were sufficient to meet the second requirement. Accordingly, the Court focused on whether the complaint alleged a constitutional violation of the decedent's right to substantive due process.
 
 
 9
 In considering whether a constitutional violation had been alleged, the Court expressed its "reluctan[ce] to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." Id. at ----, 112 S.Ct. at 1068. Thus, the Court stressed the importance of "judicial self-restraint" when considering alleged violations of substantive due process. Id.
 
 
 10
 The Collins Court noted that the plaintiff had not alleged a "wilful violation" of her husband's rights or that the city's agents "deliberately harmed" him. The Court characterized plaintiff's allegation as saying that: "the city deprived [her husband] of life and liberty by failing to provide a reasonably safe work environment." Id. at ----, 112 S.Ct. at 1069.[3] It then stated:
 
 
 11
 Fairly analyzed, her claim advances two theories: that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's "deliberate indifference" to [decedent's] safety was arbitrary Government action that must "shock the conscience" of federal judges.
 
 
 12
 Id. at ----, 112 S.Ct. at 1069 (quoting Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209-10, 96 L.Ed. 183 (1952)).
 
 
 13
 The Court first considered whether the Constitution imposed a duty on the city to provide its employees with minimal levels of safety and security in the workplace. It stressed that the Fourteenth Amendment was designed to prevent government oppression rather than to "guarantee ... certain minimal levels of safety and security." Id. (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989)). The Court stated that plaintiff's claim was "unprecedented" and "quite different from" cases where the Court recognized "a duty to take care of those who have already been deprived of their liberty"--the so-called special relationship or custodial cases. Id. The Court concluded that the decedent had not been deprived of his liberty because he had "voluntarily accepted ... an offer of employment." Id. at ----, 112 S.Ct. at 1070. Accordingly, the Court concluded that the Constitution "does [not] guarantee municipal employees a workplace that is free of unreasonable risks of harm." Id.
 
 
 14
 Having rejected the first theory, the Court turned to whether the city's alleged deliberate indifference to decedent's safety was arbitrary government action that shocked the conscience of federal judges. The Court had no difficulty rejecting this second theory. The Court noted:
 
 
 15
 [Plaintiff's] claim is analogous to a fairly typical state law tort claim: The city breached its duty of care to her husband by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law.
 
 
 16
 Id. (quoting Daniels v. Williams, 474 U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986)). The Court then based its refusal to find "the city's alleged omission ... as arbitrary ... on the presumption that the administration of Government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces." Id. at ----, 112 S.Ct. at 1070.
 
 
 17
 B. Comparison of the Complaints in These Cases and in Collins
 
 
 18
 The complaints in these cases are closely analogous to the complaint in Collins. Just as in Collins, plaintiff has not alleged a "wilful violation" of her husband's rights or that defendant's agents "deliberately harmed" him. Rather, as in Collins, plaintiff asserts that defendants adopted and followed a policy of deliberate indifference to the safety of a class of persons including the decedent.
 
 
 19
 In these cases, the constitutional right which was allegedly violated was the right of "users of public transportation" not to be "deprived ... of safe and continued enjoyment of life, and liberty without due process of law."[4] Paraphrasing Collins, plaintiff's complaints can be fairly analyzed as advancing two theories: that the Constitution imposes a duty on a municipal transit authority to provide its passengers with minimal levels of safety and security during transportation, or that the transit authority's deliberate indifference to decedent's safety was arbitrary government action that must shock the conscience of federal judges. See Collins, --- U.S. at ----, 112 S.Ct. at 1069.
 
 
 20
 Plaintiff here was not deprived of liberty when he voluntarily chose to ride the El. Therefore, just as in Collins, these cases are "quite different from" cases where the Court recognized "a duty to take care of those who have already been deprived of their liberty"--custodial cases. Id.[5] Accordingly, we agree with the district court that "to find that the federal constitution imposes a duty on SEPTA to provide its riders with minimal levels of safety and security would be contrary to the holding in Collins. If the constitution does not impose a duty upon the government employer to provide its employees with a safe working environment, ... it [does not] impose[ ] a duty on SEPTA to provide a safe passenger environment." Hester Lee Searles v. Southeastern Pa. Transp. Auth., Civil Action Nos. 91-6687 & 92-1065, 1992 WL 150701, at * 4 (E.D.Pa. June 19, 1992). We turn to the second theory--whether defendants' alleged deliberate indifference to decedent's safety shocks the conscience.
 
 
 21
 In Collins, the complaint alleged that, because of a prior accident, the city was on notice of the danger that employees would be asphyxiated and still failed to train, warn or properly equip those employees before requiring them to work in the sewers. Nevertheless, the Supreme Court found that the defendant's conduct did not rise to the level necessary to shock the conscience. In these cases, the complaints also allege that defendants knew or should have known of the risk to the safety of the riders of public transportation, although there was no prior accident. We conclude that the alleged conduct of defendants in these cases is no more shocking than the conduct alleged in Collins. Paraphrasing Collins, plaintiff's claim is analogous to a fairly typical state law tort claim: defendants breached their duty of care to her husband by failing to provide safe transportation. See Collins, --- U.S. at ----, 112 S.Ct. at 1070. Thus, if the conduct alleged in Collins was insufficient to shock the conscience, it follows that the conduct in these cases is also insufficient to support an action under Section 1983.
 
 
 22
 Our comparison of the complaints in these cases with the complaint in Collins reveals numerous significant similarities. Accordingly, it would seem that Collins compels the conclusion that the district court was correct in dismissing the complaints. Nevertheless, plaintiff argues that Collins is distinguishable. We turn to a review of plaintiff's arguments.
 
 
 23
 C. Plaintiff's Attempt to Distinguish Collins
 
 
 24
 Plaintiff seeks to distinguish the complaints in these cases from that in Collins on three bases: 1) whether the complaints allege that a state actor was "deliberately indifferent"; 2) whether the complaints allege that a state actor knew of the risk; and 3) whether the complaints allege that a state actor "directly" caused the harm. We address those arguments in turn.
 
 
 25
 First, and contrary to plaintiff's repeated mischaracterization, the complaint in Collins did allege a "policy of deliberate indifference toward the safety of [defendant's] employees." Collins, --- U.S. at ----, 112 S.Ct. at 1064. In arguing to the contrary, plaintiff mistakenly relies on language in Collins where the Court noted that the complaint did not allege that "the city or any of its agents deliberately harmed [the decedent]." Id. at ----, 112 S.Ct. at 1069 (emphasis added). We note that deliberate harm, which would seem to involve an intent to injure, is quite different from deliberate indifference. Thus, because plaintiff confuses the distinct concepts of deliberate indifference and deliberate harm, plaintiff's first ground for distinguishing Collins is unavailing.
 
 
 26
 Second, plaintiff argues that the complaint in Collins is distinguishable because "unlike th[ese] case[s], ... it [was not] alleged that the city knew or should have known of th[e] danger when [the decedent] was ordered to work in the manhole." Contrary to plaintiff's claim, the complaint in Collins did allege that "[p]rior to [the date of the accident] the City ... was on notice of the dangers to which the employees were exposed because [decedent's] supervisor had been rendered unconscious in a manhole several months prior to [the accident]." Id. at ---- n. 1, 112 S.Ct. at 1064 n. 1 Thus, plaintiff's second ground for distinguishing Collins also fails.
 
 
 27
 Third, plaintiff argues that the complaint in Collins is distinguishable because "unlike th[ese] case[s], there was no claim that the city, as employer, actually created the danger (lack of oxygen) which killed Mr. Collins." As a necessary corollary to this argument, plaintiff characterizes the danger in Collins as "lack of oxygen" in the sewers. We doubt the validity of this distinction. One can easily argue that manholes and sewers are created and maintained by municipalities and, therefore, failing to ventilate sewer gas is not meaningfully different from failing to maintain railcars in a safe operating condition. Thus, in these cases and in Collins the fundamental cause of the danger was a failure to act. Neither in these cases nor in Collins was the injury directly caused by a state actor's affirmative act in the traditional sense. See D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3d Cir.1992) ("Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger."), cert. denied, --- U.S. ----, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). In addition, one could argue that requiring an employee to work in an unsafe sewer was a more "direct" cause of harm than offering a ride in an unsafe railcar. In short, we conclude that the harm in these cases was no more directly caused by a state actor than the harm in Collins. Thus, plaintiff's third ground for distinguishing Collins is baseless.
 
 
 28
 Finally, in her brief, plaintiff argues that the district court's order dismissing plaintiff's complaints is contrary to "well-established law in this Circuit." However, the precedent plaintiff relies upon is distinguishable. Each of the cases plaintiff cites to support this argument involved a well-established constitutional right. See, e.g., Stoneking v. Bradford Area Sch. Dist., 856 F.2d 594, 599 (3d Cir.1988) ("[Plaintiff] had a constitutionally protected right to be free from sexual abuse by her school teachers that was clearly established...."), cert. granted and judgment vacated on other grounds by, 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989); Davidson v. O'Lone, 752 F.2d 817, 822 (3d Cir.1984) (recognizing that prisoner had "liberty interest in bodily integrity protected by the Fourteenth Amendment [from] the state's failure to prevent attacks by other prisoners"), aff'd 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Metzger v. Osbeck, 841 F.2d 518, 520 (3d Cir.1988) ("A decision to discipline a student, if accomplished through excessive force and appreciable pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment.").[6] Thus, the central issue in each case was not whether a constitutional violation had been alleged but, rather, whether a municipality or municipal subdivision could be held liable for the underlying constitutional violation committed by a state actor.[7] In contrast, these cases do not involve any well-established constitutional right. Thus, we need not reach the issue of whether SEPTA could be held liable where, as here, we have concluded that no constitutional right was violated.
 
 III. CONCLUSION
 
 29
 The order of the district court dismissing plaintiff's complaints for failure to state a claim on which relief could be granted will be affirmed.
 
 SUR PETITION FOR REHEARING
 
 30
 May 21, 1993.
 
 
 31
 PRESENT: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS and SEITZ,* Circuit Judges.
 
 
 32
 The petition for rehearing filed by appellants in the above captioned matter having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 
 [1]
 Plaintiff also sought class certification. The district court did not rule on the class certification because it ultimately concluded that plaintiff failed to state a claim
 
 
 [2]
 The substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them" in order "to prevent governmental power from being 'used for purposes of oppression.' " Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 277, 15 L.Ed. 372 (1856))
 
 
 [3]
 The actual allegations in the complaint in Collins are set forth supra at 790
 
 
 [4]
 This statement of the constitutional right is taken from the complaints. See Collins, --- U.S. at ----, 112 S.Ct. at 1068 ("It is important ... to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake...."). In her Reply Brief, plaintiff similarly characterizes the right as "her deceased husband's constitutional right not to be deprived of his life by state actors without due process of law, through reckless or deliberately indifferent conduct of the state actors employed by SEPTA, which affirmatively places [sic] him in a position of danger that he would not have otherwise faced."
 
 
 [5]
 In her brief, plaintiff acknowledges that the district court's rejection of her "functional custody" argument is supported by our in banc decision in D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). Thus, plaintiff does not press this issue on appeal
 
 
 [6]
 At oral argument plaintiff also cited Black v. Indiana Area School District, 985 F.2d 707 (3d Cir.1993). We find no support for plaintiff's argument in Black which we read to stand for the unremarkable proposition that summary judgment for a municipality is required if "no rational trier of fact" could conclude that the municipality was deliberately indifferent to the alleged abuse by a school bus driver. Id. at 717
 
 
 [7]
 We have recognized that a municipality would be liable for the constitutional violation of a state actor if "with deliberate indifference to the consequences, [it] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990)
 
 
 *
 Hon. Collins J. Seitz, United States Circuit Judge, was limited to voting for panel rehearing