Jacqueline **PEARSON**, Plaintiff,

v.

Bruce **MILLER** and Luzerne County Children and Youth, Inc., Defendants,

v.

**KIDSPEACE NATIONAL CENTERS FOR KIDS IN CRISIS, INC.,** Third party defendant.

No. 4:CV–97–0764.

United States District Court, M.D. Pennsylvania.

Dec. 31, 1997.

Richard Morris Hughes, III, Dudick, Decker, Shovlin & Hughes, P.C., Forty Fort, PA, for Plaintiff.

John M. Kunsch, Philadelphia, PA, Barbara A. O'Connell, J. Michael Kunsch, Sweeney & Sheehan, Philadelphia, PA, for Defendant Luzerne County Children & Youth Services.

Bruce Miller, Frackville, PA, pro se.

Richard F. Stevens, James M. Flood, Stevens & Johnson, Allentown, PA, for Kidspeace Nat. Centers for Kids in Crisis, Inc.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND:

Plaintiff Jacqueline Pearson brings this section 1983 action [1] in her individual capacity and as parent and natural guardian of Lindsay Pearson.[2] Plaintiff alleges that Lindsay, a minor, was abducted and sexually assaulted by defendant Bruce Miller.[3] The alleged incident occurred while Miller was under the custody, care and supervision of the Luzerne County Children and Youth Services, Inc. (Luzerne County C & Y). Plain-

tiff brings this action against Luzerne County C & Y and against Miller.

On August 4, 1997, Luzerne County C & Y joined Kidspeace National Centers for Kids in Crisis, Inc. (Kidspeace) as a third party defendant. Kidspeace filed an answer to the third party complaint on November 20, 1997.

Plaintiff filed an amended complaint on June 16, 1997. It appears from the record before us that plaintiff had no right to amend the complaint without first obtaining leave of court. Federal Rule of Civil Procedure 15(a) allows a party to amend only if no responsive pleading has been filed, or if no responsive pleading is permitted. Neither circumstance applies here. Defendant's motion to dismiss was filed on June 2, 1997, before plaintiff filed the amended complaint. There is nothing in the court record to indicate that the plaintiff received written consent from the defendant to file an amended complaint. Leave of court was, therefore, required, but never sought. However, in the interest of expediency and in recognition of the liberal standards applicable to motions for leave to amend, we will overlook the failure to seek leave of court and consider the amended complaint as properly before us.

Plaintiff's amended complaint asserts the following claims: 1) a section 1983 claim purportedly based on vicarious liability of Luzerne County C & Y "for the acts or omissions committed by its's (sic) agents, servants and*or employees" (Plaintiff's amended complaint, ¶ 33) (Count I); 2) a civil rights claim asserting that plaintiff was denied equal protection of the law (Count II); 3) a section 1986 claim, 42 U.S.C. § 1986, asserting that defendants conspired to deprive plaintiff of equal protection of the law (Count III); 4) a claim for attorney's fees under section 1988, 42 U.S.C. § 1988 (Count IV); 5) a state law claim against Miller (Count V); 6) a state law claim against Luzerne County C & Y (Count VI); 7) a claim for punitive damages against

---

**1.** 42 U.S.C. § 1983.

**2.** This action was filed originally in the Court of Common Pleas of Luzerne County, Pennsylvania, and was removed to this court on May 15, 1997.

**3.** Defendant Miller has not filed any responsive pleadings. Nor has counsel entered an appearance on his behalf. On December 16, 1997, the

court received a letter from Miller in which he states that he is currently incarcerated at the Pennsylvania State Correctional Institution at Mahonoy, that he has never been served with the complaint, and that all that he received in the way of service was a notice stating that he would later be served with the complaint.

Luzerne County C & Y (Count VII); 8) a claim for conduct allegedly constituting "an intentional, physical intrusion upon the solitude, seclusion and privacy of the minor plaintiff" which fails to specify whether it is grounded in federal or state law (Count VIII); 9) a second claim for punitive damages, this one being asserted against both defendants (Count IX).

Before the court are motions by C & Y to dismiss plaintiff's original and amended complaints. We will consider the motion to dismiss the amended complaint as superseding the motion to dismiss the original complaint, and will deny the latter as moot. For the reasons which follow, we will enter an order granting the motion to dismiss the amended complaint to the extent of the relief.

## DISCUSSION

### Rule 12(b)(6) motion

In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parties of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." Id.

The court is not, however, required to credit or lend credence to " 'bald assertions' " or " 'legal conclusions.' " *Morse v. Lower Merion School District,* 132 F.3d 902, 905 (3d Cir.1997), quoting *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1429–30 (3d Cir.1997). In ruling on a Rule 12(b)(6) motion, courts can and should reject " 'legal conclusions,' " " 'unsupported

conclusions' ", " 'unwarranted inferences,' ", " 'unwarranted deductions,' " " 'footless conclusions of law,' " and " 'sweeping legal conclusions in the form of factual allegations.' " *Id.* at 906 n. 8, citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1357 (2d ed.1997). "[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.,* quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

## MOTION TO DISMISS FILED BY LUZERNE COUNTY C & Y

■ To prevail under section 1983, plaintiffs must establish the violation of a federally protected statutory or constitutional right by an individual acting under color of state law. *Morse,* 132 F.3d at 905. Here, the abuse was not committed by a state actor. Miller, the perpetrator of the alleged abuse, was committed to foster care.[4] Individuals in foster care are not agents or employees of the state, and therefore are not, in any sense of the term, state actors. See generally: *K.H. Through Murphy v. Morgan* 914 F.2d 846, 852 (7th Cir.1990) (Foster parents, even if paid by the state, are not state actors.) For that reason, liability can attach to the county only if the plaintiff can demonstrate a basis for recovery not dependent upon a showing that Miller was a state actor.[5] See: *McComb v. Wambaugh,* 934 F.2d 474, 478 (3d Cir.1991) ("The distinction between harm inflicted by a state agent and injury caused by a private individual is critical.")

■ In general, there is no constitutional duty on the part of the state to protect citizens from abuses or crimes committed by other private citizens. *Morse,* 132 F.3d at 906 and *Kneipp v. Tedder,* 95 F.3d 1199, 1210 (3d Cir.1996). That was the holding of the United States Supreme Court in *DeShaney v. Winnebago County Department of Social*

---

**4.** Plaintiff alleges that Miller: "was a custodial client of the Defendant LCCYS and under the care and supervision of the Defendant LCCYS." (Plaintiff's amended complaint, ¶¶ 4 and 7).

**5.** Plaintiff alleges that: "By virtue of the fact that the Defendant was subject to the care, custody and control of the Defendant LCCYS...The De-

fendant acted with respect to their conduct toward Plaintiff 'under color of state law' within the meaning of Federal Civil Rights law including, but not limited to, 42 U.S.C. Section 1983, Section 1985(e), Section 1986 and Section 1988." (Plaintiff's amended complaint, ¶ 12).

*Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

In *DeShaney,* a young boy was physically abused by his father, to the point of suffering severe, permanent injuries. The abuse was reported to county child welfare authorities, but the child was not taken into protective custody. The child and his mother sued the county, its department of social services, and several employees of the department for their failure to protect the boy. 489 U.S. at 191–193, 109 S.Ct. at 1000–01. The Supreme Court held that no substantive due process right exists to require the states to provide protective services:

> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.... If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. **As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.**

489 U.S. at 196–197, 109 S.Ct. at 1003–1004 (citations, footnote omitted and emphasis added.).

■ The courts have recognized only two exceptions to the general rule established by the holding in *DeShaney.* Liability can arise under section 1983 for acts committed by a private citizen only if: 1) the danger or risk of harm which led to plaintiff's injury was created by the state; or 2) the state entered into a special relationship with the plaintiff under which it assumed a duty to ensure plaintiff's continued well-being. *Morse,* 132 F.3d at 905 and *Kneipp,* 95 F.3d at 1205–09.

In *Kneipp,* the Third Circuit adopted a four-part test for applying the state-created danger theory. In surveying the rulings of other courts applying the theory, the Third

Circuit found that they typically share four common elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp,* 95 F.3d at 1208, quoting *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152 (3d Cir.), *cert. denied,* 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). In addition to these four factors, the plaintiff must allege and prove that the state acted with deliberate indifference. *Morse,* 132 F.3d at 910.

■ Liability arises under the state-created danger theory only if a state agent or employee knowingly placed the plaintiff, in particular, in a position where he or she was likely to come to harm and created or substantially contributed to the circumstances which caused the injury he or she suffered. *Kneipp,* 95 F.3d at 1208. See also: *Johnson v. Dallas Independent School District,* 38 F.3d 198, 200 (5th Cir.1994), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). Merely creating a situation which exposed the public in general to an obvious hazard or risk of harm is not enough. The risk created must be particular to the plaintiff, and the harm must be foreseeable, a requirement the Third Circuit has labeled the "foreseeable plaintiff" requirement. *Morse,* 132 F.3d at 912 n. 11. See also: *Estate of Rosenbaum by Plotkin v. City of New York,* 975 F.Supp. 206, 219–222 (S.D.N.Y.1997) and *Davis v. Fulton County, Arkansas,* 884 F.Supp. 1245, 1254 (E.D.Ark. 1995), *aff'd,* 90 F.3d 1346 (8th Cir.1996). If this were not the case, "[w]here the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." *Morse,* 132 F.3d at 913 n. 12. This does not, however, require the plaintiff to show that he or she in particular,

and no one else, was placed in foreseeable peril. The plaintiff may recover if he can demonstrate that he "was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions . . . . . The primary focus when making this determination is foreseeability." *Id.* at 913.

Most decisions which have allowed the case to proceed under the state-created danger theory have involved one of two basic scenarios. *Kneipp*, 95 F.3d at 1206–07. In the first, a state actor altered plaintiff's circumstances in such a way as to render the plaintiff more vulnerable to danger or risk of harm before coming in contact with the state's agent. For example, in *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990), the defendant police officer arrested a drunken driver and impounded his car, leaving the driver's female passenger stranded alone at night in a crime-ridden area with tragically predictable results. The Ninth Circuit Court of Appeals stated: "The fact that [Officer] Ostrander arrested . . . [the driver of the vehicle], impounded his car, and apparently stranded . . . [the plaintiff] in a high-crime area at 2:30 a.m. distinguished Wood from the general public and triggers a duty of the police to afford her some measure of peace and safety." *Id.* at 590. In *K.H. ex rel. Murphy v. Morgan,* the state removed a seventeen-month-old child from the custody of her parents, then shuttled her from foster home to foster home where she was molested, abused, and not properly cared for. The Seventh Circuit found that, having removed her from the custody of her natural parents, the state could not then "place her in a position of danger, deliberately and without justification, without . . . violating her rights under the due process clause of the Fourteenth Amendment." *Id.* at 849. Similarly, in *White v. Rochford,* 592 F.2d 381, 384–85 (7th Cir.1979), the defendant police officer arrested the driver of a vehicle, leaving minor children passengers stranded alone in the car on a busy highway. In each of these cases, the state's agent altered the plaintiff's situation in such a way as to place him or her in the path of a peril he had not faced before state intervention and then did nothing to

remove or eliminate the risk that he had created. Compare: *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983) (police officer who came upon crashed vehicle and made no attempt to see if the occupants were in jeopardy not liable under section 1983, because the officer merely came upon the situation, but did nothing to cause or create the accident) and *Miller v. Webber,* 1997 WL 698043 at *1 (E.D.Pa. Nov.4, 1997) (State-created danger theory cannot be premised on "nonfeasance of the failure of an official to act or to investigate").

In the second scenario, a state employee created circumstances which placed the plaintiff in contact with a convicted criminal offender in state custody or still serving out his criminal sentence. For example, in *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), the state not only placed in a work program an inmate it knew had a history of violent behavior, but also allowed him to work under the supervision of an untrained and unarmed city employee. Two prison inmates assigned to the program abducted the plaintiff, a city employee, from the town hall and held her hostage for three days. Thus, in this and other cases allowing recovery by the plaintiff, an agent of the state placed the plaintiff in harm's way. Compare: *Lovins v. Lee,* 53 F.3d 1208, 1211 (11th Cir.1995) (distinguishing *Cornelius* and expressing reservations about its continuing validity post-*Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

In contrast, courts which have ruled the doctrine inapplicable had before them cases in which the state's conduct arguably increased the risk that some member of the general public would come to harm, but did not measurably increase the danger to the plaintiff in particular. See, e.g., *Mark,* 51 F.3d at 1140–53 (alleged civil rights violation based on a policy which affects the public in general does not create a basis for application of the state-created danger theory); *Salas v. Carpenter,* 980 F.2d 299, 309 (5th Cir. 1992) (police action did not create the hostage situation which led to plaintiff's decedent's death); *L.W. v. Grubbs,* 974 F.2d 119

(9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); *Brown v. Grabowski,* 922 F.2d 1097 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991), (failure to protect victim of domestic abuse from her attacker did not give rise to a constitutional violation); *Bryson v. City of Edmond,* 905 F.2d 1386, 1392 (10th Cir.1990) (state was not constitutionally responsible for death of post office employees shot by a fellow postal worker, since the state did not create the danger or take the plaintiff from a position of relative safety to a position of danger); and *Jackson v. City of Joliet,* 715 F.2d 1200, 1206 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (There was no constitutional liability for a police officer's failure to rescue the occupants of a burning car; the officer did not create the hazard and did not know that the car was occupied).

Application of the "special relationship" exception to non-liability for acts of private citizens is equally restrictive. Thus far, it has been held to apply only to individuals held in state custody, more specifically, to prison inmates, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and individuals confined to a mental institution, *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Less restrictive impositions on individual freedom and mobility, such as school compulsory attendance laws, do not give rise to the type of all-controlling "special relationship" required to impose on the state an obligation to protect an individual from other private citizens. *Wyke v. Polk County School Board,* 129 F.3d 560 (11th Cir. Nov.19, 1997). See also: *Mitchell v. Duval County School Board,* 107 F.3d 837 (11th Cir.1997). Only if the state deprives an individual of the ability to look after himself, or in the case of children, to rely on their parents or guardians for protection and life's necessities, is the state deemed to assume an affirmative obligation to carry out the duties of self-preservation normally left to individual citizens. *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1376 (3d Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). See also: *Wooten v. Campbell,* 49 F.3d 696, 701 (11th Cir.1995) and *Black by*

*Black v. Indiana Area School District,* 985 F.2d 707, 713 (3d Cir.1993) and compare: *Walton v. Alexander,* 20 F.3d 1350, 1355 (5th Cir.1994) (handicapped child enrolled in state-run residential special education school had a "special relationship" with the state which imposed upon it a duty to provide the child with "reasonable conditions of safety").

### Plaintiff's allegations of state action

■ Nothing in the complaint suggests that the minor plaintiff had a "special relationship" with the state which required it to protect her from coming to any harm. She was in no way confined by the state or under the supervision of a state actor when the alleged assault occurred. Therefore, she can allege a viable claim for the violation of her civil rights only if she alleges facts which establish that an agent of the state created the danger that she would be assaulted by Miller.

Plaintiff alleges that her daughter was abducted and assaulted by Miller on December 17, 1993 after she left the school bus. The specifics as to how their paths came to cross and what role a state agent had in that encounter are fairly sketchy. Plaintiff alleges that: 1) she and her daughter reside at Mountain Spring Road, Hunlock Creek, Luzerne County, Pennsylvania; 2) Miller was placed "for sometime prior" to the assault on plaintiff "in a foster home in the proximity of Hunlock Creek, Luzerne County, Pennsylvania area" (Plaintiff's amended complaint, ¶ 9); 3) "On the day in question and for sometime prior thereto, the Defendant LCCYS knew, or after reasonable investigation should have known that, the Defendant Miller posed a threat to neighbors, and more particularly with regards to those with whom he would have contact and*or association." (Plaintiff's amended complaint, ¶ 10); 4) "At all times material and relevant hereto and more particularly, sometime prior to the incident in question the Defendant LCCYS was, according to information and belief, on notice of the fact that the Defendant Miller had violent propensities and was a danger to others." (Plaintiff's amended complaint, ¶ 11); and 5) "Upon information and belief, Plaintiff avers that Defendant LCCYS had a relationship with Kidspeace...relative to the custodial

care of Bruce Miller and with the subsequent placement of him in foster care and was aware of the fact that the Defendant Miller had violent propensities and was a danger to others and further had been alerted to the fact that should the Defendant Miller not be treated but rather allowed access to the general population he posed a threat to that population; and in particular to the minor Plaintiff in this matter." (Plaintiff's amended complaint, ¶ 13).

Missing from the amended complaint are allegations demonstrating a proximate link between the actions of a state agent and the harm suffered by the minor plaintiff. *Morse,* 132 F.3d at 907. Proximity is required in two respects: 1) geographic and 2) temporal. If either connection is too remote, i.e. if a long period of time elapsed between the county's placement of Miller in the Hunlock Creek foster home or if Miller lived there for months or years before assaulting the minor plaintiff, the connection between the two is too attenuated, and proximate cause is lacking.

Although it is true that the federal rules require only notice pleading, the plaintiff must allege facts sufficient to establish a right to recover under the theory invoked. *Morse,* 132 F.3d at 905. Plaintiff has not done so here. Missing from her amended complaint are allegations demonstrating that the county's placement of Miller in the foster home in Hunlock Creek increased the risk that the minor plaintiff, in particular, not merely the public in general, would suffer harm as a result.

The Third Circuit's application of the four-part *Kneipp* test in *Morse* demonstrates the inadequacy of Pearson's allegations. Diane Morse, a teacher at a child care center located in a public school building, was killed by a local resident with a history of mental illness. The murderer gained access to the school building through an unlocked rear door routinely left open by construction personnel performing work at the school. Morse's husband contended that the school personnel knew the door was routinely left open by construction workers to gain easy access to the building, a violation of school policy, and further knew that prior to Morse's murder, other crimes had been committed against school property and personnel by individuals who gained access through the unlocked rear door. In ruling plaintiff's allegations inadequate under the state-created danger theory, the Third Circuit held that as a matter of law:

defendants...could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability.

**First, the complaint did not allege that defendants were aware of Stovall's violent propensities.** There are no allegations that Stovall had made threats against Diane Morse, or any other persons at the Lower Merion High School, or even that she had a history of violent behavior. The only allegation in the complaint that addresses whether defendants should have foreseen the danger posed by Stovall that day was that, during the week preceding the murder, she had been seen "loitering in the school and the school area.".... Assuming that defendants were aware of this fact, as we must when reviewing the grant of a motion to dismiss, this is insufficient as a matter of law to put defendants on notice that Stovall would return in a few days with a .38 revolver and a homicidal intent.

**Second, there is no allegation that defendants were aware of anyone posing a credible threat of violence to persons inside the school building.** Although the complaint alleges that defendants were aware of previous "security breaches" by unnamed persons, it does not allege that Stovall, or any other mentally deranged person, had entered the school building previously. In addition, the complaint contains no allegation, and plaintiff cannot prove any set of facts, that would demonstrate that defendants were aware of the likelihood that a mentally deranged person would enter the school in search of a victim.

Third, Stovall's attack was not a "fairly direct" result of defendants' actions. **We recognize that plaintiff has alleged that the harm which befell Ms. Morse was "a direct result of defendants' acts." But we are no bound to accept a conclusory statement, and as a matter of law this cannot be true.** Plaintiff's allegation that, as a result of defendants' decision to allow construction workers to have access to the school through an unlocked rear entrance, Stovall was able to enter the building and murder Diane Morse is insufficient to support liability. While we must accept the allegation that Stovall gained access to the building through the unlocked rear entrance, this does not mean the attack on Diane Morse occurred as a direct result of defendants allowing the construction crews to prop open the door. **The causation, if any, is too attenuated. Plaintiff can prove no set of facts which will provide the direct causal connection between Stovall's deadly attack and any of defendants' allegedly improper acts.**

*Morse*, 132 F.3d at 908 (Bold emphasis supplied). Here, as in *Morse*, the connection between the minor plaintiff and any alleged act or nonfeasance or malfeasance is too remote under the allegations before us.

Also missing are factual allegations that the state acted with "willful disregard for" or "deliberate indifference to" the safety of the minor plaintiff. The second prong of the four-part tested adopted in *Kneipp*, requires allegations and proof that the defendant state actor "acted with willful disregard for or deliberate indifference to plaintiff's safety." *Morse*, 132 F.3d at 910, citing *Kneipp*, 95 F.3d at 1208 & n. 21. " '[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and ... [they] must have been at least deliberately indifferent.' " *Id.*, quoting *Johnson*, 38 F.3d at 201. There must be allegations, and ultimately proof, that state action evinced "a willingness to ignore a foreseeable danger or risk." *Id.* Plaintiff's allegations are not sufficient to support an inference that Luzerne County C & Y workers knew that Miller posed a "credible danger" to others and could and should have foreseen that he would assault the plaintiff or someone in a discrete class to which she belongs.

Counts I and II of the amended complaint will, therefore, be dismissed without prejudice and with leave to amend to allege those facts necessary to state a viable claim under section 1983.

**Recovery against county agency**

Plaintiff seeks to recover not against a specific county employee allegedly responsible for Miller's placement in the Hunlock Creek foster home, but against the county agency itself. Her choice of defendants raises another barrier to her recovery under civil rights laws. Principles of vicarious liability and respondeat superior do not apply to civil rights claims. *Doe v. Richardson Independent School District*, 1997 WL 600706 at *2 (N.D.Tex. Sept.23, 1997).

A civil rights plaintiff can recover against county government or a government agency only if governmental policy or custom caused the violation of plaintiff's civil rights and the municipality or county government acted with deliberate indifference to the rights of the plaintiffs or others similarly situated. *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997) and *Searles v. Southeastern Pennsylvania Transportation Authority*, 990 F.2d 789, 794 n. 7 (3d Cir.1993). See also: *Shepard v. Kemp*, 912 F.Supp. 120, 125 (M.D.Pa.1995).

For liability to attach here to Luzerne County C & Y, plaintiff must allege facts from which it can be inferred that C & Y officials had a policy or custom of allowing such abuses or clear potential for abuse or violence by Miller specifically, or by foster care wards in general, to go unchecked and unchallenged, i.e. with deliberate indifference to the safety of those with whom foster care wards would come in contact. *Kneipp*, 95 F.3d at 1212, citing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Under Supreme Court's holdings on municipal liability: Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclama-

tion, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996), quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990). "[A] prerequisite to establishing liability in either situation is a showing that a policymaker was responsible either for the policy, or through acquiescence, for the custom." *Kneipp,* 95 F.3d at 1212, citing *Beck,* 89 F.3d at 971. "Custom", for *Monell* purposes, "must reflect a course of action deliberately chosen from among various alternatives." *Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir.1996).

■ "In order to ascertain who is a policymaker, 'a court must determine which official has final, unreviewable discretion to make a decision or take action.'" *Kneipp,* 95 F.3d at 1213, quoting *Andrews,* 895 F.2d at 1481. Policymakers have the authority to make decisions which "constrain the discretion" of their subordinates. *Id.*

■ In addition to establishing policy or custom, the plaintiff must allege and prove facts from which it can be inferred that the alleged policy or custom was the proximate cause of plaintiff's harm. "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990).

Thus, to establish liability on the part of the Luzerne County C & Y, a county government agency, the plaintiff must allege that: 1) officials at a policy-making or supervisory level had actual or constructive knowledge that Miller or other foster care wards had violent propensities, making them a risk to others; 2) but despite such knowledge, followed a policy or custom of tolerating or ignoring the risk they posed; and 3) exhibited indifference to the fate of individuals like the plaintiff likely to be harmed by such wards of the state. *Doe,* 103 F.3d at 507. Plaintiff's *Monell* claim is lacking in that

respect. The section 1983 claims asserted against Luzerne County C & Y in Counts I and II will, therefore, be dismissed on that ground as well.

### Claims asserted under section 1985(3)

■ In addition to section 1983, plaintiff invokes section 1985(3), 42 U.S.C. § 1985(3). The section 1985(3) claim is not pleaded in a separate count, but is listed among the statutes plaintiff invokes in the introductory paragraphs of her amended complaint. (Plaintiff's amended complaint, ¶ 12).

Section 1985(3) provides no substantive rights in and of itself. "The rights, privileges, and immunities that section 1985(3) vindicates must be found elsewhere." *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983), citing *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

■ To state a cause of action under section 1985(3), the plaintiff must allege four elements: 1) a conspiracy; 2) for the purpose of depriving, either, directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood,* 463 U.S. at 828–29, 103 S.Ct. at 3355–56, 77 L.Ed.2d 1049 (1983). See also: *Lyes v. City of Riviera Beach,* 126 F.3d 1380, 1389–90 n. 19 (11th Cir.1997).

Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws..., the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or de-

privation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Section 1985(3) applies only where there is "some racial, or perhaps otherwise class-barred, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Status as a protected class for other purposes does not guarantee status as a protected group under section 1985(3). Section 1985(3) protects "victims of historically pervasive discrimination" and those with "immutable characteristics". *Carchman v. Korman Corp.,* 594 F.2d 354, 356 (3d Cir.), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). "[W]omen are a class protected by section 1985(3)," *Lyes,* 126 F.3d at 1390. Section 1985(3), therefore, "embraces suits premises on gender-based conspiracies." *Id.* Minors or children, have not, however, been held to be a protected class.

Plaintiff's amended complaint does not specify on what basis section 1985(3) liability is invoked. Nor does it allege facts sufficient to support claims that Luzerne County C & Y conspired in some way with Miller to violate the federal rights of the minor plaintiff. "Allegations of a conspiracy 'must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives.'" *Bennett v. Maier,* 1997 WL 727489 at *3 (E.D.Pa. Nov.20, 1997), quoting *Cap v. Hartman,* 1996 WL 266701 at *3 (E.D.Pa. May 9, 1996). See also: *Alberici v. Szewczak,* 1997 WL 550224 at *3 n. 8 (E.D.Pa. Aug.26, 1997) ("[A]llegations that defendant were acting 'in concert' to form a conspiracy lacks sufficient factual specificity to be properly considered.")

All claims asserted under section 1985(3) will, therefore, be dismissed without prejudice and with leave to amend.

### Claims asserted under section 1986

Count III of plaintiff's amended complaint asserts a claim under section 1986,

42 U.S.C. § 1986. "[N]o claim can be maintained under section 1986 unless a cause of action has been established under section 1985." *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 431 n. 10 (3d Cir.1988), citing *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Plaintiff has not, under the facts before us, alleged a viable claim under section 1985(3). We will, therefore, dismiss without prejudice and with leave to amend Count III.

### Claim for attorney's fees

Count IV of plaintiff's amended complaint asserts a claim for attorney's fees under section 1988, 42 U.S.C. § 1988. That claim rises or falls with plaintiff's civil rights claims and cannot exist independent of them. It is, therefore, dismissed without prejudice and with leave to amend. It remains viable, however, only if plaintiff files a second amended complaint which alleges viable claims under section 1983.

### Punitive damages

Counts VII and IX of plaintiff's amended complaint assert claims for punitive damages against Luzerne County C & Y. Punitive damages are not recoverable against a municipal or county government. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–68, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981) or against a municipal agency. *Bolden v. Southeastern Pennsylvania Transportation Authority,* 953 F.2d 807 (3d Cir. 1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). The claims asserted against Luzerne County C & Y in Counts VII and IX of the amended complaint will, therefore, be dismissed with prejudice and without leave to amend. Plaintiff's claim for punitive damages against Miller is not subject to the same restrictions, and remains viable.

### State law claims remaining

Remaining in the case are plaintiff's state law claims asserted in Counts V, VI and VIII.[6] If plaintiff does not file an amended

---

**6.** The court is not certain from the pleadings whether plaintiff intends to assert a federal or a state law claim in Count VIII. This should be clarified if a second amended complaint is filed.

complaint, only the state law claims would remain in the case. In that case, the court will decline to exercise supplemental jurisdiction over the remaining state claims, and those claims will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion to dismiss plaintiff's original complaint (record document no. 3) filed by defendant Luzerne County Children and Youth Services (C & S) is denied as moot.

2. The motion to dismiss plaintiff's amended complaint (record document no. 7) filed by defendant Luzerne County Children and Youth Services is granted to the extent of the relief provided in this order.

3. Count III of plaintiff's amended complaint (record document no. 4) and any claim purportedly based on 42 U.S.C. § 1985(3) are dismissed without prejudice and with leave to amend.

4. Counts VII and IX are dismissed with prejudice and without leave to amend to the extent that they assert a claim for punitive damages against Luzerne County Children and Youth Services, Inc.

5. To the extent that Counts VII and IX assert a claim for punitive damages against defendant Bruce Miller, they remain in the case.

6. Counts I, II, IV of plaintiff's amended complaint are dismissed without prejudice and with leave to amend to bring the claims alleged into conformity with the requirements for alleging civil rights claims against a governmental entity for the actions of a private citizen.

7. The state law claims asserted in Counts V, VI and VIII [1] remain in the case. If, however, plaintiff does not file an amended complaint alleging viable federal civil rights claims within the time period allotted in this order, Counts V, VI and VIII will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

8. Plaintiff is granted until Friday, January 30, 1998 to file a second amended complaint to remedy the pleading deficiencies in her civil rights claims discussed in the accompanying memorandum.

9. Defendant is granted twenty days from the date of service of the second amended complaint to file an answer or move to dismiss.

10. Pursuant to plaintiff's motion filed December 19, 1997 (record document no. 19), the court's most recent scheduling order dated July 15, 1997 is vacated. A revised scheduling order will issue at a later date.

11. Plaintiff is directed to file on or before Friday, January 30, 1998, a return of service indicating valid service of the complaint on defendant Bruce Miller. If valid return of service is not filed on or before that date, all claims asserted against Miller may be dismissed pursuant to Fed.R.Civ.P. 4(m) unless good cause is shown by that date for an extension of time for service.

12. The Clerk of Court is directed to send to counsel a copy of Miller's letter to the court dated November 20, 1997 (record document no. 18).

13. If plaintiff does not file an amended complaint within the time period granted in this order, all federal claims will be dismissed with prejudice and without leave to amend. All remaining state law claims will then be dismissed without prejudice.

---

If plaintiff intends to assert a federal civil rights claim, it must comply with the requirements discussed above.

**1.** See the note in the accompanying memorandum regarding the ambiguities of Count VIII and the need for clarification, if amended.