Filed 7/28/21  Nichols-Stuart v. County of Amador CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| AMY NICHOLS-STUART, | C087609 |
| Plaintiff and Appellant, | (Super. Ct. No. 17CVC102220) |
| v. | |
| COUNTY OF AMADOR et al., | |
| Defendants and Respondents. | |

This is an action under title 2 United States Code section 1983 (section 1983) by plaintiff and appellant Amy Nichols-Stuart against defendant Amador County (County) and various respondent employees and entities of Amador County after her three-year-old son Jace was killed in an automobile accident.  The boy's father, Tyler Nichols, was the driver and had custody of the child pursuant to a juvenile court's order in a dependency action initiated by the County.  Tyler had a history of alcohol abuse that included prior convictions for driving under the influence, but he was ordered to refrain from drug or alcohol use when he was awarded custody in the dependency case.  Although he resumed drinking sometime after getting custody of Jace, neither the County nor its various

1

defendant and respondent social workers sought to remove the boy from his father's custody.

Appellant appeals from the judgment of dismissal after the trial court sustained respondents' demurrer to her amended complaint without leave to amend. The trial court held respondents were not liable under section 1983 because appellant forfeited her right to contest placement of her son with his father by submitting to this placement at the jurisdiction and disposition hearing in the dependency action, and because the respondents did not have a duty to protect the boy from his father because they did not have physical custody of him and did not create or materially increase the risk to the boy from Tyler's drinking.

Appellant contends she stated a cause of action for violation of her right of familial association, she did not effect any waiver of her rights, and there was neither absolute nor qualified immunity. She also contends that the trial court's restriction on the length of her points and authorities in opposition to the demurrer violated due process.

By submitting on a disposition report that recommended custody with the father, appellant became barred from claiming the initial placement of her son with him violated her right to familial association. Since the boy was placed with a parent rather than a foster family, and since the respondents did not act to increase the danger to him, the failure to remove Jace from his father before his death did not violate substantive due process. Restricting the length of the opposition to the demurrer did not violate due process and did not prejudice her. Since there can be no federal civil rights violation, we affirm the dismissal.

BACKGROUND

On February 9, 2016, respondent Amador County initiated dependency proceedings regarding appellant's three-year-old son Jace[1] Nichols pursuant to Welfare and Institutions Code section 300.[2] Jace resided with appellant and her boyfriend Robert Stuart. Tyler Nichols was the boy's father. The petition alleged appellant failed to seek medical help after Jace fractured his leg in January. Despite his being in clear pain and notwithstanding the maternal grandmother's urgings, the fractured leg went untreated until the maternal grandmother took Jace to a doctor. Stuart had a substantial criminal record including unlawful sex with a minor and had been recently institutionalized due to methamphetamine-induced hallucinations. Although appellant had moved out after Stuart had threatened to harm Tyler, she and Jace soon returned to him. Appellant was arrested for possession of methamphetamine and drug paraphernalia in 2015.

The February 24, 2016 initial hearing report related that the current custody arrangement was Jace stayed with appellant during the week, with Tyler having custody on the weekends. Tyler had three prior convictions for driving under the influence of alcohol, most recently in 2007. He also had prior felony drug, firearm, and domestic violence convictions, with the last felony, corporal injury to a spouse, in 2014. As noted above, Stuart also had a significant criminal record. Tyler and appellant related to social workers that they were scared of Stuart; Tyler said that Stuart hit Jace.

At a dependency hearing on March 1, 2016, county counsel announced appellant and Stuart had been recently arrested for possession of methamphetamine, causing the County to recommend full custody for Tyler, with supervised visitation for appellant. County counsel recommended appellant be admitted to a rehabilitation center and

---

[1]    We use Jace's full name since he is deceased.

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

3

substance testing for Tyler; Tyler's counsel agreed, while appellant's counsel requested additional time to investigate the rehabilitation center. The juvenile court awarded interim custody to Tyler conditioned on random substance testing, with supervised visitation for appellant, and Stuart could have no contact with Jace.

The March 2016 jurisdiction and disposition report related that Tyler and appellant married while Tyler was in county jail, but they later divorced. Appellant had declined to go to an inpatient program but had scheduled a substance abuse assessment. Jace appeared to be making a good adjustment and adequate progress since being placed with his father. The report recommended inpatient care for appellant with a substance abuse and mental health assessment for Tyler. Both parents would receive services, with Jace remaining in Tyler's custody. Tyler would refrain from using illegal drugs or alcohol.

The combined jurisdiction and disposition hearing took place on March 24, 2016. All parties acknowledged receiving the most recent report. Both parents waived trial on the jurisdiction and submitted. Appellant's counsel agreed with the disposition plan except for the rehabilitation center recommendation. The primary concern with the rehabilitation center was appellant was concerned she could lose her job if the rehabilitation center placement lasted too long.

After confirming the parents' jurisdictional waivers, the juvenile court sustained the petition and proceeded to disposition. Appellant's counsel requested argument solely as to visitation. Finding the parties otherwise waived any right to dispute the recommended disposition, the juvenile court continued Jace's removal from appellant with twice-weekly visits for appellant, and ordered appellant to undergo inpatient rehabilitation.

On June 29, 2016, appellant told one of the respondent social workers that Tyler had resumed drinking. When so told, social workers would talk about Stuart and ignore the concerns about her son. Tyler admitted to a respondent social worker he had resumed drinking; he thought it was okay even though he had been told not to. Appellant had

4

been told that one time Tyler was intoxicated when he dropped off Jace at daycare. Appellant reported the incident to law enforcement on July 2, 2016. The next day, the sheriff's office informed her that Jace was okay. Social workers twice warned Tyler to stop drinking but he continued to do so. On July 28, 2016, daycare confirmed that Tyler was intoxicated when he dropped off Jace. When a social worker spoke to Tyler about his drinking, he did not think there was anything wrong with it because he was off probation.

On August 2, 2016, Tyler drove while intoxicated and crashed into a tree while Jace was a passenger. On August 5, 2016, the County filed a section 387 supplemental petition seeking Jace's placement in foster care following his recovery on the ground that Tyler drank and drove even though he had been warned not to several days earlier. Jace died from his injuries on August 9, 2016.

On August 15, 2017, appellant filed a wrongful death action against respondents based on California law, asserting that she had objected to the juvenile court's placement of Jace with Tyler due to Tyler's substance abuse and subsequently warned the County about the danger multiple times. The County filed an answer and moved for a judgment on the pleadings, asserting various defenses including waiver and statutory immunity.

After filing an opposition, appellant subsequently filed a supplemental opposition asserting she had a viable claim under section 1983 based on her right to familial association with Jace and sought leave to amend the complaint. She filed a supporting declaration asserting that everyone knew Tyler was an alcoholic at the time of the case plan, that she had told respondent and defendant social worker Shannon Diener on June 29, 2016, that Tyler had been drinking, and that she learned on July 2, 2016, that Tyler had been intoxicated when he dropped off Jace at daycare, and she had informed the sheriff's department of this.

The trial court issued a tentative ruling granting the County's motion on the ground that appellant waived her right to seek damages and requested oral argument over

5

whether the proposed amendment could overcome the waiver. Following argument, the court dismissed the complaint with leave to amend.

Appellant then filed an amended complaint asserting a single count under section 1983 for the deprivation of her Fourteenth Amendment right to familial association. The factual allegations began with a verbatim recitation of appellant's declaration in support of the motion to amend the complaint along with the averments in the original complaint that everyone knew Tyler was an alcoholic, she objected to Jace's placement with him for that reason, Tyler's custody required abstinence from drinking, but, despite her complaints and other signs of Tyler's alcohol abuse, Jace was not removed from Tyler.

The County filed on March 7, 2018, a request to file an oversized 20-page demurrer brief, which was granted the next day. Appellant's counsel was served with notice of this order on March 29, 2018. The County demurred on March 19, 2018.

On April 9, 2018, appellant filed a 41-page opposition that lacked a table of cases, and concurrently filed a request for leave to file an oversized brief. The trial court denied the application but authorized appellant to file a 20-page brief. Appellant never filed an opposition in conformance with the court's order.

The trial court issued a tentative ruling refusing consideration of appellant's brief to the extent it exceeded 20 pages and sustaining the demurrer without leave to amend. It found appellant waived her claim by agreeing to the original placement with Tyler and subsequently failing to seek modification of the disposition order. The court further found the County lacked a constitutional obligation to protect Jace from Tyler as Tyler had physical custody of Jace and the County had not acted to create or materially increase the risk from Tyler's drinking, which likely rendered leave to amend futile.

Following argument, the trial court sustained the demurrer without leave to amend and entered a judgment of dismissal as to the County and the various defendants employed by the County.

DISCUSSION

I

*The Demurrer was Proper*

Appellant contends the court erred in granting a demurrer as her complaint properly alleged a violation of her Fourteenth Amendment right to familial association. We disagree.

A. *Standard of Review*

We "apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer." (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.)

While a complaint attacked by a motion to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.) does not need detailed factual allegations to survive, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, [citation]. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555 [167 L.Ed.2d 929].) This standard was further clarified in *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678-679 [173 L.Ed.2d 868], a section 1983 case: "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Citation.] . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' [Citation.]"

7

On appeal, a decision to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.), like the sustaining of a demurrer under California law, is reviewed de novo. (*Manzarek v. St. Paul Fire & Marine Ins. Co.* (9th Cir. 2008) 519 F.3d 1025, 1030; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) Similarly, a dismissal without leave to amend is reviewed for abuse of discretion under both our rules and the federal rules. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Manzarek*, at p. 1031.)

B. *Waiver of Right to Familial Association*

The Supreme Court has held "that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. [Citations.]" (*Santosky v. Kramer* (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599].) Similar cases generally involve minor children and a parent's primary right to make decisions about how to raise them. Further, as summarized by the Ninth Circuit Court of Appeals: "It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that 'the state's interference with that liberty interest without due process of law is remediable under [section] 1983.' [Citations.] 'This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents.' [Citations.] Moreover, 'the First Amendment protects those relationships, including family relationships, that presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." ' [Citations.]" (*Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d 668, 685.)

Removal of Jace from appellant's custody implicates this right. However, any analysis of the constitutionality of the removal must begin with the fact that appellant did not contest the recommendations in the jurisdictional and dispositional report other than

8

appellant having to go to inpatient rehabilitation. She waived trial and submitted on the jurisdiction recommendations, and agreed to the disposition plan other than her concerns regarding inpatient rehabilitation. Before finding jurisdiction, the juvenile court told appellant that if she submitted, the court would find jurisdiction. Appellant stated her understanding of this consequence and made express waivers of her rights to challenge the report, ask the social worker questions, and to present a defense. Appellant likewise submitted on the dispositional report; before entering the dispositional orders, the juvenile court found, without objection, that appellant and Tyler had waived their rights to trial, confrontation, subpoena witnesses, and present evidence, other than appellant's objection to inpatient rehabilitation.

"A plea of 'no contest' or an 'admission' (Cal. Rules of Court, rule 1449(e)) is the juvenile court equivalent of a plea of 'nolo contendere' or 'guilty' in criminal courts. A plea of 'no contest' to allegations under section 300 at a jurisdiction hearing admits all matters essential to the court's jurisdiction over the minor." (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181.) Likewise, "by submitting on the recommendation without introducing any evidence or offering any argument, the parent waived her right to contest the juvenile court's disposition since it coincided with the social worker's recommendation. He [or she] who consents to an act is not wronged by it. [Citation.]" (*In re Richard K.* (1994) 25 Cal.App.4th 580, 590; see also *In re Kevin S.* (1996) 41 Cal.App.4th 882, 886 [same].)

This carries over to suits for damages based on removal of a child from a parent. *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268 involved an appeal from the trial court's grant of the defendants' summary judgment motion in a suit for damages by the parents and their children arising from the children's detention from their parents.

(*Id.* at pp. 1270-1271.) In action under state law (*id.* at p. 1281),[3] the Court of Appeal held "that the parents' knowing and voluntary pleas of no contest to the jurisdictional allegations during dependency proceedings defeat their claims . . . ." (*Id.* at p. 1271.) It noted that a no contest plea waives a parent's ability to challenge the waived jurisdictional and dispositional orders and findings on appeal. (*Id.* at p. 1284.) The no contest plea applied to later proceedings as well, "such as moving to reconsider the earlier finding. [Citation.]" (*Ibid.*; see *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1526-1527 [no contest plea bars motion for reconsideration unless plea set aside].) From this, the Court of Appeal concluded: "Plaintiffs' claims are fundamentally premised on their assertions that the children were wrongfully removed, detained, and subjected to the jurisdiction of the juvenile court based on the alleged intentional misconduct of the social workers. But given that their pleas admitted sufficient evidence for the court to exercise that jurisdiction, these arguments are simply untenable." (*Gabrielle A.*, at p. 1284.)

We agree. While removal of a child from a parent's custody can violate the right to familial association, appellant effectively waived her right to contest the jurisdictional and dispositional orders other than the requirement that she undergo inpatient substance abuse rehabilitation. *Gabrielle A.* involved waiver of state law claims but waiver applies equally to federal constitutional claims. " 'No procedural principle is more familiar to this Court than that a constitutional right' or a right of any other sort, 'may be forfeited in criminal [cases] as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' [Citation.]" (*United States v. Olano* (1993) 507 U.S. 725, 731 [123 L.Ed.2d 508, 517].) Appellant cannot now contest the actions implicated by the right to familial association, the removal of Jace from her custody and his initial placement with his father Tyler with her acquiescence.

_____

[3] Federal law claims were previously dismissed in federal district court. (*Gabrielle A., supra*, 10 Cal.App.5th at pp. 1280-1281.)

Although appellant did not waive what happened to her son after his removal from her custody, the alleged failure of respondents to protect Jace from his father's drinking and driving does not implicate the right to familial association. Pursuant to section 388, a parent or other person with an interest in the dependent child can petition the juvenile court to "change, modify, or set aside" any previous order due to a change in circumstances. (§ 388, subd. (a).) Filing a section 388 petition is the appropriate way for a parent to change some aspect of the juvenile court's orders; telling a social worker about the alleged deficiency is insufficient, and failure to file a section 388 petition indicates a concession that any asserted claims would have failed. (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1209; see also *In re Liam J.* (2015) 240 Cal.App.4th 1068, 1083 ["noncustodial parent's remedy under the circumstances here is to seek modification of the juvenile court's order under section 388"].)

"Courts have characterized the right to familial association as having both a substantive and a procedural component. While the right is a fundamental liberty interest, [citations], officials may interfere with the right if they 'provide the parents with fundamentally fair procedures [citation.]" (*Keates v. Koile* (9th Cir. 2018) 883 F.3d 1228, 1236.) Section 388 protects a parent's right to due process in dependency proceedings. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307, 309-310.) Appellant cannot contest the court-ordered removal of her son from her custody, and did not avail herself of the procedure protecting her interest in his care and custody during the dependency proceedings. Having been provided with due process during the dependency proceedings, she cannot now claim those proceedings or any action or failure to act pursuant to them violated her right to familial association.

C. *No Duty to Remove*

Although the failure to protect Jace from Tyler drinking and driving with him did not violate appellant's right to family association, Jace being removed from appellant's custody pursuant to a dependency action implicates another constitutional right. "It is

11

true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." (*DeShaney v. Winnebago Cty. Soc. Servs. Dept.* (1989) 489 U.S. 189, 198 [103 L.Ed.2d 249] (*DeShaney*).)

This is a narrow right. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. (*DeShaney, supra*, 489 U.S. at p. 195.) Accordingly, the general rule is that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." (*Id*. at p. 197.)

The *DeShaney* rule of nonliability is subject to two exceptions. The first exception applies when the state assumes some responsibility for a person's safety and general well-being, as when it "takes a person into its custody and holds him [or her] there against his will." (*DeShaney, supra*, 489 U.S. at pp. 199-200.) In this "special relationship" situation, the state's affirmative duty to protect arises from the limitation the state has imposed on the person's freedom to act for himself [or herself] "through incarceration, institutionalization, or other similar restraint of personal liberty." (*Id*. at p. 200.)

The second *DeShaney* exception applies when the state "affirmatively places the [person] in a dangerous situation." (*Huffman v. County of Los Angeles* (9th Cir. 1998) 147 F.3d 1054, 1059; see *DeShaney*, *supra,* 489 U.S. at p. 201.) The "state created danger" exception requires proof of " 'deliberate indifference to a known or obvious

12

danger.' [Citation.]" (*Campbell v. State Dep't of Soc. & Health Servs.* (9th Cir. 2011) 671 F.3d 837, 845.) Deliberate indifference means that " '[t]he state actor must recognize[] [an] unreasonable risk and actually intends to expose the plaintiff to such risks without regard to the consequences to the plaintiff.' [Citation.]" (*Id*. at p. 846.) A state created danger " ' "involves affirmative conduct on the part of the state," ' " meaning the state action must have either created the danger or rendered the person more vulnerable to an existing danger. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1149.) If the state puts a person in a position of danger from private persons and then fails to protect him or her, it is as much an active tortfeasor as if it had thrown him or her into a snake pit. (*O'Dea v. Bunnell* (2007) 151 Cal.App.4th 214, 221.)

Neither exception applies here. Appellant contends *DeShaney* does not apply because, unlike the boy in *DeShaney*, Jace was under the juvenile court's jurisdiction pursuant to a dependency action. *DeShaney* involved a boy who was beaten and severely injured by his father; county social service employees had evidence that the boy had been beaten and neglected but did not intervene before he was seriously injured. (*DeShaney, supra*, 489 U.S. at pp. 191-193.) This is a distinction without a difference. While this case differs from *DeShaney* because Jace was under the juvenile court's jurisdiction, it is the same as *DeShaney* in the aspect crucial to the Supreme Court's decision. In both cases, the child was in his parent's custody when he was harmed.

Courts have recognized an exception to *DeShaney* for dependency cases where children are harmed in foster placements. (See, e.g., *Doe v. Covington School District* (5th Cir. 2012) 675 F.3d 849, 856; *Yvonne L. By and Through Lewis v. New Mexico Department of Social Services* (10th Cir. 1992) 959 F.2d 883, 892-893; *D.R. by L.R. v. Middle Brooks Area Vocational Technical School* (3rd Cir. 1992) 972 F.2d 1364, 1369-1370, 1372.) No such exception exists for a child placed with a parent in a dependency action.

13

A case from the Eleventh Circuit illustrates this point. *Wooten v. Campbell* (11th Cir. 1995) 49 F.3d 696 (*Wooten*) involved a boy, Daniel, who was subject to a dependency action in the juvenile court, with mother having legal custody and father having visitation. (*Id.* at p. 698.) The father had been subject to a protective order requiring him to stay 500 yards away from Daniel; he subsequently abducted the boy and was charged with felony interference with custody. (*Ibid.*) In the ensuing dependency action, the father was allowed supervised visits at first, later he was allowed unsupervised visitation. (*Ibid.*) Following an unsupervised visit, he abducted Daniel and later murdered him before committing suicide. (*Ibid.*)

The mother filed a section 1983 action alleging a due process violation for failing to protect the son from his father. (*Wooten, supra*, 49 F.3d at p. 698.) The Eleventh Circuit reversed the district court's denial of the defendants' motion to dismiss, finding the plaintiff failed to allege a violation of a constitutional right. (*Id.* at pp. 698, 699.)

Key to the Eleventh Circuit's analysis was the fact that Daniel was placed with his parents rather than in foster care. "The state did not so restrain Daniel's freedom or hold him against his will to such an extent that a 'special relationship' was created. The affirmative duty to protect arises from the limitation which the state imposes on an individual's freedom to act on his own behalf. The state did not impose any limitation on Daniel's personal liberty or freedom to act. The state placed Daniel in the physical custody of his natural mother and monitored Daniel's visitation with his natural father. The state's obligation did not rise to the level of an affirmative duty to protect because the state did not restrain Daniel's liberty to the extent that it rendered him unable to care for himself. [Citation.]" (*Wooten, supra*, 49 F.3d at p. 701.)

The panel concluded *DeShaney* controlled. "The present case is similarly analogous to *DeShaney* and the above-referenced cases to warrant our conclusion that Wooten has no claim under substantive due process. In those cases, like here, the children remained in the physical custody of their parents who were free to take steps to

14

protect them from harms perpetrated by other persons.  The key inquiry in this case is whether the county caseworkers controlled Daniel's life to such an extent that Wooten could not reasonably be expected to protect him.  The answer is that they did not.  Accordingly, Wooten's complaint fails to state a claim upon which relief can be granted and should have been dismissed." (*Wooten, supra,* 49 F.3d at p. 701.)

Other courts have come to the same conclusion, finding under *DeShaney* there is no deprivation of a constitutional right where a child in a dependency action is harmed while placed with a parent.  (See, e.g., *Burton v. Richmond* (8th Cir. 2004) 370 F.3d 723, 727; *A.S. By and Through Blalock v. Tellus* (D. Kam. 1998) 22 F.Supp.2d 1217, 1221; *Briggs v. Oklahoma ex. rel. Oklahoma Dept. of Human Services* (W.D. Okla. 2007) 472 F.Supp.2d 1294, 1301-1302.)  We agree.  "Only if the state deprives an individual of the ability to look after himself, or in the case of children, to rely on their parents or guardians for protection and life's necessities, is the state deemed to assume an affirmative obligation to carry out the duties of self-preservation normally left to individual citizens.  [Citations.]" (*Pearson v. Miller* (M.D. Penn. 1997) 988 F.Supp. 848, 855.)  The parent with whom the child is placed in a dependency proceeding has a due process right to familial association with that child.  (*In re J.P.* (2014) 229 Cal.App.4th 108, 125.)  While that parent may be subject to the orders of the juvenile court or judicially authorized directives from social workers, the child is nonetheless in the custody of the parent, rather than the state.  Jace's placement with his father precludes the special relationship exception to *DeShaney.*

We also find the state-created danger exception to *DeShaney* inapplicable.  The danger Jace tragically succumbed to was created by his father rather than any government actor.  Tyler had an alcohol abuse problem, but abstaining from drugs and alcohol was part of his case plan when he was awarded custody at the disposition hearing.  While none of the respondents sought to remove Jace when they learned Tyler started drinking again, they did remind Tyler of his obligation and warned him not to resume drinking.

15

Respondents neither created the danger nor rendered Jace more vulnerable to the existing danger. The alleged inaction of respondents does not support the second *DeShaney* exception.

Since there are no possible grounds to support a constitutional violation, the trial court was correct to grant the demurrer without leave to amend and enter the judgment of dismissal.[4]

## II

### *The Nonconforming Brief*

Appellant also contends the trial court's failure to consider the last 21 pages of her 41-page opposition to the demurrer deprived her of due process.

A brief in support of or in opposition to a demurrer is limited to 15 pages, absent leave from the court that was requested at least one day before the oversized brief's filing. (Cal. Rules of Court, rule 3.113(d), (e).) Respondents filed an oversized 20-page brief in support of the demurrer, but not before obtaining the court's leave to do so in accordance with the rules. The trial court's ruling was served on appellant by mail on March 29, 2018.

On April 9, 2018, appellant sought to file a 41-page brief, but leave to file the oversized brief was filed simultaneously with the brief. The trial court amended the application to a request to file a 20-page brief and granted the request as modified. Appellant never filed a new brief conforming to the court's order.

The trial court's tentative ruling was to sustain the demurrer and to refuse to consider appellant's brief to the extent it exceeded 20 pages. At the demurrer hearing the following day, appellant's counsel admitted the application to file an oversized brief was untimely but asserted he had not been served with its denial, leading him to believe leave

---

[4] As we find no violation of a constitutional right, we decline to address whether absolute or qualified immunity applies here.

16

had been granted.  The court told appellant's counsel that since his request was untimely, the court would have allowed him to file a brief as long as the one in support of the demurrer.  Counsel replied, "Had I known, I would have jumped to conform and probably slash and burn to get it down to 20 pages.  But we didn't have a clue."  The court replied that it was surprised not to receive an amended opposition from him.  The matter was not addressed any further.

There is no due process right to ignore court rules.  Even assuming some due process right is implicated by defective notice, appellant has the burden of establishing prejudice.  (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106.)  She cannot do so.  Appellant was able to brief the issues raised in her opposition in this appeal, and was able to file an opening and reply brief that both exceeded the 41 pages of the partially rejected trial brief.  Applying a de novo standard of review, we concluded the trial court's ruling was correct.  Since her complaint was properly dismissed without leave to amend, she cannot establish prejudice for failure to consider the full 41 pages of her trial brief.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

_____/s/_____
BLEASE, Acting P. J.

We concur:

_____/s/_____
HULL, J.

_____/s/_____
HOCH, J.

17